**TOWN OF OGUNQUIT**

v.

**Eric BRAZER and Robert Liston.**

Supreme Judicial Court of Maine.

Argued Jan. 14, 1985.

Decided March 25, 1985.

Murray Plumb & Murray, E. Stephen Murray (orally), Ellyn C. Ballou, Portland, for plaintiff.

Ayer, Hodsdon & Austin, Gordon C. Ayer (orally), Ralph W. Austin, Kennebunk, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

Eric Brazer and Robert Liston appeal from a decision of the Superior Court, York County, which affirmed the judgment of the District Court, Kittery, that they had violated the zoning ordinance of the Town of Ogunquit when they expanded their business by placing tables outside the restaurant without providing additional parking. Before us, the appellants and the town dispute the applicability of the grandfather provisions of the ordinance contained in Ch. I, § II(B) and (C). Because we determine that the Ogunquit Zoning Ordinance does not include the exterior space used for tables outside a restaurant within the meaning of floor area that would require additional parking spaces,

we reverse without reaching the grandfather provisions.

Brazer and Liston have owned and operated a business in Ogunquit known as the Perkins Cove Fish Market and Oyster Bar since July of 1983. The land and building are leased from John and Nancy Laurent. The building was constructed by Brazer and Liston during the winter and spring of 1982–1983. Before that date the premises were leased by Nick Poli who operated a restaurant known as the Rocky Cove Restaurant. That building was constructed by Poli during the winter and spring of 1972–1973 and opened in the summer of 1973. Originally, it was used partially for a restaurant and partially for an art gallery, and later the restaurant was expanded to include the entire building.

Tables and chairs were placed outside the building and patrons allowed to eat outside in the summer of 1973. In 1974, Poli received a building permit for placement of a removable outside deck to be used only in the summer months. Patrons were seated and served on the deck for the remainder of the time Poli occupied the premises, a period that extended through the summer of 1982.

In November of 1982, Poli destroyed the building by bulldozing it down. This action may not have been with the consent of the owners of the property, the Laurents, as they are now suing Poli for destruction of the building. Shortly after this incident Brazer and Liston began negotiations with the Laurents to obtain a lease for the property. An agreement was reached by which Brazer and Liston sought to build a building the exact size of the one constructed by Poli. These plans changed, however, when they were informed by the Code Enforcement Officer (C.E.O.) that the building would not be grandfathered. Instead a building of the same size was constructed, but with an additional small storage area of 16 by 24 feet. This plan was submitted to the C.E.O. and a certificate of occupancy was issued. The business has six parking spaces, the number required by Ch. II, § II(D) of the ordinance and the same number the business had when operated by Poli.

Brazer and Liston opened for business as the Perkins Cove Fish Market and Oyster Bar in July of 1983. Later that month, they placed tables and benches on a gravel area outside the building and allowed patrons to eat there. This area falls within the area previously occupied by Poli's deck but is smaller and seats fewer patrons than did Poli's deck.

On August 3, 1983, Brazer and Liston were notified that their tables violated the ordinance. On August 5, 1983, a complaint against them was filed in District Court, Kittery, on behalf of the town for allegedly expanding their restaurant business without sufficient parking facilities. An identical complaint was filed on September 8, 1983. On December 8, 1983, the District Court concluded that the parking requirements of the Ogunquit Zoning Ordinance apply to outside eating areas and that the parking facilities provided for the expanded restaurant were insufficient. The court also concluded that Brazer and Liston failed to meet their burden of establishing that the building was grandfathered since the prior building was bulldozed down and the use abandoned. A civil forfeiture of $700 was imposed on April 27, 1984. Brazer and Liston appealed to the Superior Court, York County, which affirmed the District Court judgment on June 26, 1984. Defendants now appeal from that affirmance.

When the Superior Court acts as an intermediate appellate tribunal, we review directly the decision of the District Court to determine whether that decision contains an error of law that affects the validity of the judgment. *Bigney v. Blanchard*, 430 A.2d 839, 843 (Me.1981). The issues in this case concern the meaning of certain terms in the Ogunquit Zoning Ordinance. The meaning of such terms is a question of law. *Camplin v. Town of York*, 471 A.2d 1035, 1037 (Me.1984); *Driscoll v. Gheewalla*, 441 A.2d 1023, 1027

(Me.1982). Because the town seeks to impose monetary penalties for a violation, the ordinance provisions must be strictly construed. *See State v. Norton,* 335 A.2d 607, 612 (Me.1975); *City of Saco v. Jordan,* 115 Me. 278, 279–280, 98 A. 808 (1916).

Each complaint against Brazer and Liston charges that they did "expand the use of Perkins Cove Fish Market in said Ogunquit by placing tables for use by patrons, outside said restaurant which is in violation of Town of Ogunquit Zoning Ordinance, Chapter II, Section II, Paragraph D." Ch. II, § II(D) of the ordinance requires that a restaurant have the following minimum parking when new construction, expansions and changes of use necessitate increased parking requirements: "1 parking space for each 100 square feet, or major fraction thereof, of floor area not used for storage or food preparation." In addition to "floor area," section II(D) uses a variety of measures for defining minimum parking requirements, for instance: so many spaces per dwelling unit, sleeping room, bed, chapel, bowling lane or mobile home. Floor area, however, is not specifically defined in the zoning ordinance. Chapter I, section III does provide a definition of *habitable* floor space which it defines as "being an enclosed living area *exclusive of porches, patios, terraces, balconies and similar areas whether or not enclosed.*" (emphasis added). The ordinance also fails to define exactly what new construction, expansions and changes of use require increased parking when an expansion is made to a *conforming* building. The only discussion of the expansion of a building by the addition of an open patio concerns the enlargement of *nonconforming* structures. Chapter I, section II(C)(3) provides that "the addition of a patio with no structures elevated above ground level shall not constitute the expansion of a nonconforming structure." Reading the zoning ordinance as a whole and strictly construing its provisions, we determine that in defining when additional parking spaces are required, the ordinance does not include as "floor area" the addition of an open patio.

The town argues that Brazer and Liston should have challenged the C.E.O.'s ruling that their building was not grandfathered by appeal to the zoning board of appeals rather than resort to self-help by placing the tables outside. The town relies on *State v. Higgins,* 338 A.2d 159 (Me.1975) for the policy that "one may not resort to self-help to test the propriety of an administrative determination, but must seek instead direct administrative or judicial review." In light of our decision, we need not reach the issue of whether the use is grandfathered. We note, however, that Brazer and Liston are not collaterally attacking the C.E.O.'s ruling that the building was not grandfathered. The record indicates that the first notification of a violation of the ordinance was on August 3, 1983 and the complaint was filed on August 5, 1983. Brazer and Liston had no opportunity to appeal this decision to the zoning board of appeals. Their defense here is not a collateral attack on the C.E.O.'s decision.

The entry is:

Judgment reversed.

Remanded to the Superior Court to remand to District Court with directions to enter judgment for the defendants.

All concurring.