MURISC#299-18                    9-7-18

**STATE OF MAINE**                    **UNIFIED CRIMINAL COURT**
**KENNEBEC, ss**                      **LOCATION: AUGUSTA**
                                      **DOCKET NO. CR-2018-90**

**STATE OF MAINE**          )
                           )
v.                         )          **ORDER ON MOTION TO SUPPRESS**
                           )
**KATHARINE E. AYER**       )

Hearing on the Defendant's motion to suppress was held on August 23, 2018. The Defendant was present and represented by Matthew B. Nichols, Esq. The State was represented by Assistant District Attorney Jacqueline A. Sartoris. After hearing both attorneys were given additional time to submit memoranda and case law for the court's consideration. Both attorneys did so.

The Defendant was charged by the State on March 12, 2018, with one count of Criminal OUI, Class D, according to 29-A M.R.S.A. §2411(1-A)(A), based on allegations that she did operate a motor vehicle while under the influence of intoxicants or while having an alcohol level of .08% grams or more of alcohol per 100 milliliters of blood or 210 liters of breath. The State also charged the Defendant with one count of Operating an Unregistered Vehicle, Class E, according to 29-A M.R.S.A. §351(1)(B). These two offenses were alleged to have occurred on or about January 12, 2018, in Manchester, Maine.

Through her original motion to suppress dated January 17, 2018, Defendant sought to suppress many different pieces of evidence but at hearing she agreed that the only issue was whether the officer had probable cause to require her to take an intoxilyzer test. Defendant argues that there was no probable cause to believe she was committing the crime of Criminal OUI and the intoxilyzer result should be suppressed. Defendant concedes, however, that the officer did have probable cause to arrest the Defendant for Operating an Unregistered Vehicle.

1

At hearing the State presented the testimony of Trooper Daniel Murray of the Maine State Police. The Defendant was present and chose not to testify or call any witnesses or present any evidence beyond her cross-examination of the officer.

## Findings of Fact

During the evening hours of January 12, 2018, Defendant was driving a white VW on a public way somewhere near the Manchester Fire Department. (The State never presented any evidence or testimony about exactly when or what town or what road the stop of the Defendant occurred.) The evening was a rainy, foggy night with snow banks on the sides of the road. Trooper Daniel Murray of the Maine State Police had been a trooper for exactly one year. Trooper Murray was in uniform and driving a state police cruiser. (Trooper Murray had previously worked as a security officer at a hospital and dealt with intoxicated persons throughout his employment there.) Trooper Murray received a call from another off-duty state trooper, Trooper Tlumac, that he was following a car that was "all over the road". Trooper Murray proceeded to the location and got behind a line of 5 vehicles that were going about 25-35 miles per hour in a 50 mile per hour zone. This public way was a 2-lane paved road with a yellow center line and white fog lines. After about 30 seconds of following the line of cars, Trooper Murray became concerned about the safety of the Defendant's reportedly swerving vehicle so he engaged his blue lights. All other vehicles, including the off-duty trooper, pulled over and Trooper Murray pulled in behind the Defendant's vehicle and made a stop. The Defendant pulled off to the side of the road without any issue.

Trooper Murray walked up to the driver's side window and spoke with the Defendant. The Defendant and her passenger said they were coming back from dinner and a movie in

2

Waterville. The Defendant admitted to having had a glass of wine with dinner. Trooper Murray smelled an odor of alcohol on the Defendant's breath. The Defendant gave Trooper Murray her driver's license, an expired registration, an expired insurance card and other paperwork he didn't ask for. The Defendant admitted she was having a hard time seeing the white line on the road because of the foggy conditions and acknowledged that she was "kind of in and out" on the road.

Trooper Murray asked the Defendant to step out of her car to do some field sobriety tests. The Defendant was asked repeatedly about how much she had had to drink and each time said just one glass of wine. The Defendant did admit it was a "generous" glass of wine at one point. The Defendant showed no signs of unsteadiness getting out of her car and walked behind her car with Trooper Murray. Trooper Murray attempted to have the Defendant do the HGN (Horizontal Gaze Nystagmus) test. Trooper Murray explained the test and attempted to have the Defendant do the test at least 5 times but the Defendant was unable to complete the test as she kept moving her head and not just her eyes. Trooper Murray thought of trying to do the Walk and Turn test but the road conditions were not adequate as there was a steep grade. Trooper Murray suggested doing a One-Legged Stand test but the Defendant explained that she had narrow feet and it might be a problem. Ultimately, Trooper Murray abandoned that test as well given the severe grade of the roadside and the conditions and the concern that the Defendant might fall. The Defendant's speech was not slurred in spite of being "chatty". The Defendant's eyes were not red, bloodshot or glassy as is the case in many OUI arrests. The Defendant never swayed during her time with Trooper Murray on the side of the road. Trooper Murray explained that he was going to take the Defendant in for a test given her slow and erratic operation, her admission to drinking alcohol, the smell of alcohol on her breath and her inability to complete the HGN test.

On the way to the jail, Trooper Murray considered stopping at the Manchester Fire Department to use their building's flat, dry floor to try and complete standardized field sobriety tests like Walk and Turn and One-Legged Stand. Ultimately, Trooper Murray decided not to do those tests and also decided not to give other non-standardized tests such as the alphabet test, the counting backward test or the finger dexterity test. Instead, Trooper Murray went to the Augusta Police Department and administered an intoxilyzer test to the Defendant.

### Probable Cause to Ask Defendant to Take an Intoxilyzer Test

This court looks to the case of *State v. Webster*, 2000 ME 115 ¶7, 754 A.2d 976 as authority on the issue of probable cause in cases of OUI in Maine. This case is very helpful to the court's analysis of the issue and is directly on point in this case.

> The probable cause standard for requiring a person to take a blood alcohol test has a very low threshold. A person is guilty of operating under the influence if his or her senses are "impaired however slightly" or "to any extent" by the alcohol that person has had to drink. See *State v. Worster*, 611 A.2d 979, 981 (Me. 1992). For there to be probable cause to arrest someone for operating under the influence, therefore, an officer must have probable cause to believe that the person's senses are affected to the slightest degree, or to any extent, by the alcohol that person has had to drink. A reasonable suspicion to support probable cause can exist independent of any evidence of actual impaired driving. See *State v. Eastman*, 1997 ME 39, ¶9, 691 A.2d 179, 182; *State v. Wood*, 662 A.2d 919, 920-921 (Me. 1995).

In this case, the officer stopped the Defendant during evening hours of a rainy, foggy night. The Defendant was traveling well below the speed limit and was swerving. This is not uncommon on Maine roads during the winter when road conditions are poor. The court does not put a great deal of weight in these observations given the road conditions that night as seen on the video. The Defendant gave paperwork to Trooper Murray that had not asked for. The State argues this shows signs of impairment but it is just as likely that this could have been from being

4

nervous as many people are during a police stop. The Defendant admitted having one glass of wine and had the smell of alcohol on her breath. The Defendant's speech was not slurred and she did not have red, bloodshot or glassy eyes. The Defendant had no issues pulling her car to the side of the road or getting out of the car to attempt field sobriety tests. The Defendant never swayed during the time that she spent with the officer on the side of the road. The Defendant was "chatty" but was polite and cooperative with Trooper Murray. The Defendant was not able to follow the instructions to perform the HGN test and it is unknown what the reason for this was. No other field sobriety tests were given to the Defendant before she was asked to perform an intoxilyzer test. Road conditions (a severe grade) prevented Trooper Murray from doing normal road-side standardized field sobriety tests. Trooper Murray could have given the Defendant other tests (standardized or non-standardized) at a location like the Manchester Fire Department or the Augusta Police Department - but he decided against this idea. Based on the totality of the circumstances, the observations of Trooper Murray and the other off-duty trooper, as a whole, did not give police enough information to believe that the Defendant was probably operating a motor vehicle and that probably her senses were impaired however slightly or to any extent by the alcohol she had had to drink.

Accordingly, the Defendant's request to suppress her taking of the intoxilyzer test for a lack of probable cause is **GRANTED**.

The entry shall be:

For the foregoing reasons, the Defendant's Motion to Suppress is granted.

Dated: September 6, 2018

Eric J. Walker,
Judge, Maine District Court

Entered on the docket 9-7-18

5

STATE OF MAINE
    v.
KATHARINE E AYER
351 LOVEJOY SHORES DRIVE
FAYETTE ME 04349

DOB: 12/17/1955
Attorney: MATTHEW NICHOLS
         NICHOLS & CHURCHILL
         1250 FOREST AVENUE
         PORTLAND ME 04103
         RETAINED 03/19/2018

CRIMINAL DOCKET
KENNEBEC, ss.
Docket No   KENCD-CR-2018-00090

**DOCKET RECORD**

State's Attorney: MAEGHAN MALONEY

## Charge(s)

1   OUI (ALCOHOL)                          01/12/2018 MANCHESTER
Seq 12942 29-A  2411(1-A)(A)      Class D
   MURRAY              / MSP

2   FAILURE TO REGISTER VEHICLE            01/12/2018 MANCHESTER
Seq 9142  29-A  351(1)(B)         Class E  Charged with COMPLAINT on Suppleme
   MURRAY              / MSP


## Docket Events:

01/18/2018 FILING DOCUMENT -  CASH BAIL BOND FILED ON 01/18/2018

01/18/2018 Charge(s): 1
         HEARING -  ARRAIGNMENT SCHEDULED FOR 03/19/2018 at 08:30 a.m. in Room No.  1

01/18/2018 BAIL BOND - $500.00 CASH BAIL BOND FILED ON 01/18/2018

         Bail Receipt Type: CR
         Bail Amt:  $500
                                Receipt Type: CK
         Date Bailed: 01/12/2018     Prvdr Name: KATHARINE  AYER
                                Rtrn Name: KATHARINE  AYER

03/15/2018 Charge(s): 1,2
         SUPPLEMENTAL FILING -  COMPLAINT FILED ON 03/12/2018

03/20/2018 Charge(s): 1
         HEARING -  ARRAIGNMENT WAIVED ON 03/19/2018

03/20/2018 Charge(s): 1,2
         PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 03/19/2018

03/20/2018 Party(s):  KATHARINE E AYER
         ATTORNEY -  RETAINED ENTERED ON 03/19/2018

         Attorney: MATTHEW NICHOLS
03/20/2018 Charge(s): 1,2
         HEARING -  DISPOSITIONAL CONFERENCE SCHEDULED FOR 05/15/2018 at 10:00 a.m. in Room No.  1

03/20/2018 Charge(s): 1,2

HEARING - DISPOSITIONAL CONFERENCE NOTICE SENT ON 03/19/2018

EMAIL
05/17/2018 Charge(s): 1,2
HEARING - DISPOSITIONAL CONFERENCE HELD ON 05/15/2018
WILLIAM STOKES , JUSTICE
Defendant Present in Court
05/17/2018 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 05/15/2018

05/17/2018 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 06/04/2018 at 02:30 p.m. in Room No. 3

NOTICE TO PARTIES/COUNSEL
05/17/2018 HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 05/17/2015

TO DA
05/17/2018 HEARING - MOTION TO SUPPRESS NOTICE SENT ON 05/17/2018

REGULAR MAIL TO DEFENSE COUNSEL
05/17/2018 MOTION - MOTION EXPERT WITNESS REPORT FILED BY DEFENDANT ON 05/15/2018

05/17/2018 HEARING - MOTION EXPERT WITNESS REPORT SCHEDULED FOR 06/04/2018 at 02:30 p.m. in Room No. 3

05/17/2018 HEARING - MOTION EXPERT WITNESS REPORT NOTICE SENT ELECTRONICALLY ON 05/17/2018

SENT TO DA
05/17/2018 HEARING - MOTION EXPERT WITNESS REPORT NOTICE SENT ON 05/17/2018

BY REGULAR MAIL TO DEFENSE COUNSEL
06/04/2018 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 06/04/2018

Attorney: MATTHEW NICHOLS
06/04/2018 MOTION - MOTION TO CONTINUE GRANTED ON 06/04/2018
WILLIAM STOKES , JUSTICE
COPY TO PARTIES/COUNSEL
06/12/2018 HEARING - MOTION EXPERT WITNESS REPORT CONTINUED ON 06/04/2018

06/12/2018 HEARING - MOTION EXPERT WITNESS REPORT SCHEDULED FOR 08/23/2018 at 10:00 a.m. in Room No. 1

1 1/2 HOURS
06/12/2018 HEARING - MOTION EXPERT WITNESS REPORT NOTICE SENT ELECTRONICALLY ON 06/12/2018

06/12/2018 HEARING - MOTION TO SUPPRESS CONTINUED ON 06/04/2018

06/12/2018 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 08/23/2018 at 10:00 a.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL
06/12/2018 HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 06/12/2018

08/30/2018 HEARING - MOTION TO SUPPRESS HELD ON 08/23/2018
ERIC WALKER , JUDGE
08/30/2018 OTHER FILING - OTHER DOCUMENT FILED ON 08/29/2018

Attorney: MATTHEW NICHOLS

DEFT'S CLOSING COMMENTS ON MOTION TO SUPPRESS
08/30/2018 OTHER FILING - OTHER DOCUMENT FILED ON 08/30/2018

DA: JACQUELINE SARTORIS
STATE'S MEMO ON DEFT'S MOTION TO SUPPRESS
08/30/2018 CASE STATUS - DECISION UNDER ADVISEMENT ON 08/23/2018
ERIC WALKER , JUDGE
MOTION TO SUPPRESS
08/30/2018 CASE STATUS - CASE FILE LOCATION ON 08/23/2018

W/ J. WALKER
09/07/2018 CASE STATUS - CASE FILE RETURNED ON 09/06/2018

09/07/2018 MOTION - MOTION TO SUPPRESS GRANTED ON 09/06/2018
ERIC WALKER , JUDGE
COPY TO PARTIES/COUNSEL
09/07/2018 ORDER - COURT ORDER FILED ON 09/06/2018
ERIC WALKER , JUDGE
SEE ORDER. FOR THE FOREGOING REASONS, THE DEFENDANT'S MOTION TO SUPPRESS IS GRANTED.
09/07/2018 ORDER - COURT ORDER ENTERED ON 09/07/2018

09/07/2018 MOTION - MOTION EXPERT WITNESS REPORT GRANTED ON 05/15/2018
WILLIAM STOKES , JUSTICE
09/07/2018 HEARING - MOTION EXPERT WITNESS REPORT NOT HELD ON 09/07/2018

MOTION HAD BEEN GRANTED PREVIOUSLY
09/07/2018 TRIAL - DOCKET CALL SCHEDULED FOR 11/07/2018 in Room No. 1


A TRUE COPY
ATTEST: _____
Clerk